IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW SWANNER MCGAHEY, | § | |
| TDCJ #426071, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3343 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Andrew Swanner McGahey (TDCJ #426071) has filed a petition under 28 U.S.C. § 2254, seeking a federal writ of habeas corpus to challenge his underlying 1986 criminal conviction and the calculation of his sentence following the revocation of his supervised release.  He appears *pro se* and *in forma pauperis*.  The respondent has filed a motion for summary judgment, arguing that McGahey is not entitled to relief.  (Doc. # 16).  McGahey has filed a reply and a motion to stay this case.  (Docs. # 17, # 18).  After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

## I.   BACKGROUND

McGahey is presently in custody as the result of a judgment of conviction entered against him in the 16th District Court of Denton County, Texas, on July 3, 1986, in cause number 19,449.  A jury found McGahey guilty of aggravated sexual assault in that case.  The

same jury sentenced McGahey to serve thirty-five years in the Texas Department of Corrections, which is now known as the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). McGahey's conviction was affirmed on direct appeal, *McGahey v. State*, 744 S.W.2d 695 (Tex. App.— Fort Worth 1988), and the Texas Court of Criminal Appeals refused his petition for discretionary review on December 1, 1988.

After serving less than half of his thirty-five year sentence, McGahey was released from prison on December 23, 1998, onto the form of parole known as mandatory supervision.[1] McGahey insists that his thirty-five year prison sentence "expired" at that time because the actual amount of time that he had served (*i.e.*, "flat time" or "calendar time") plus the time credit for good conduct that he earned while incarcerated (*i.e.*, "good-time

---

[1]    There are two ways in which a prisoner becomes eligible for early release from confinement under Texas law. The first is by "parole" and the second is "mandatory supervision" release. "Parole" means "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(6) (Vernon 2004). "Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007). Regardless of the distinction, once an inmate is released to mandatory supervision, he is considered to be on parole. *See Jackson*, 475 F.3d at 263, n.1 (citing TEX. GOV'T CODE § 508.147(b); *Coleman v. Dretke*, 395 F.3d 216, 219, n.1 (5th Cir. 2004), *cert. denied*, — U.S. —, 126 S. Ct. 427 (2005)). McGahey was released on mandatory supervision in spite of his conviction for aggravated sexual assault because of the date of the offense (1985). Under the statute currently in place, inmates such as McGahey, who have been convicted of aggravated assault, are not eligible for mandatory supervision. *See* TEX. GOV'T CODE ANN. § 508.149.

credit") equaled thirty-five years on the date of his release.  After spending less than five years on supervised release, McGahey was arrested on September 18, 2002, and charged with violating the terms of his parole.[2]  McGahey's parole was revoked following a hearing and he returned to TDCJ custody on December 17, 2002.  McGahey's parole revocation resulted in the forfeiture of any time that expired while he was out of prison (*i.e.*, "street time") and all of his previously earned good-time credit.  Because prison officials concluded that he was not eligible to have any of his forfeited time credits restored, McGahey had a substantial portion of his thirty-five year sentence left to serve.  McGahey remains incarcerated at the Pack Unit in Navasota, Texas.[3]

McGahey filed the pending federal habeas corpus petition on October 10, 2006.[4]
McGahey argues that the forfeiture of his previously earned good-time credit has extended his sentence unlawfully and that the jury at his original trial was not allowed to consider this

---

[2]     McGahey reports that he violated the technical terms of his parole.  According to the state court records, the parole board found that McGahey violated condition # 2 of the terms of his supervised release, which required him to "[o]bey all municipal, county, state, and federal laws." *Ex parte McGahey*, No. 37,371-03 at 120.  McGahey was arrested and charged with sexual assault. *See id.* at 125-27.  After hearing testimony from the victim, the parole board concluded that McGahey had violated condition # 2 and voted to revoke his parole. *See id.* at 135-40.

[3]     The petitioner was convicted of his underlying offense in Denton County, Texas.  Because the petitioner is incarcerated within this district, however, this Court has jurisdiction over his pending petition. *See Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

[4]     Although the Clerk's Office recorded the petition as filed on October 23, 2006, McGahey executed the petition on October 10, 2006, indicating that he placed his pleadings in the prison mail system on that same day.  For statute of limitations purposes, courts in this circuit treat the date a *pro se* prisoner deposits a federal petition in the mail as the filing date. *See Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)), *cert. denied*, 531 U.S. 1164 (2001).

issue when it imposed his sentence.  In three related claims, McGahey contends that he is entitled to relief from his conviction for the following reasons:  (1) the jury that imposed the thirty-five year prison sentence was not instructed that forfeited good-time credit would not count toward "the diminution of his sentence"; (2) the forfeiture of good-time credit constitutes an "upward departure" in his sentence in violation of the Sixth Amendment to the United States Constitution because the jury did not "determine beyond a reasonable doubt all facts legally essential to his sentence"; and (3) his continued incarceration as the result of the forfeited good-time credit violates the Separation of Powers doctrine found in the United States Constitution and the Sixth Amendment right to a jury trial because his sentence exceeds the amount that the jury imposed.  In a fourth claim, McGahey complains that prison officials calculated his sentence improperly after his parole revocation and return to TDCJ. In particular, McGahey complains that prison officials have refused to restore the previously earned good-time credit that he forfeited upon the revocation of his parole, thereby unlawfully lengthening his sentence in violation of due process and the prohibition against ex post facto laws.

McGahey concedes that he raises the above-referenced claims one through three for the first time on federal habeas corpus review and that these claims have not been presented previously in state court, either on appeal or in a state habeas corpus application.  It appears that his fourth claim concerning the calculation of his sentence was raised on state habeas corpus review, where it was denied without a written order.  *See Ex parte McGahey*, No.

37,371-03 (Tex. Crim. App. Feb. 16, 2005).[5]  The respondent has filed a motion for summary

judgment, arguing that the first three claims presented by McGahey are unexhausted and that

they are further barred by the governing statute of limitations.  The respondent argues that

McGahey's fourth claim concerning the calculation of his sentence is also untimely and,

alternatively, that this claim has no merit.  McGahey has filed a response and a motion to

stay this case to allow him the opportunity to return to state court and exhaust his first three

claims.  The parties' contentions are addressed below.

## II.   STANDARD OF REVIEW

The respondent's motion for summary judgment is governed by Rule 56 of the Federal

Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden is on the

moving party to show that "there is an absence of evidence to support the nonmoving party's

case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth

---

[5]     McGahey filed an initial application for a state writ of habeas corpus to challenge his
conviction, which the Texas Court of Criminal Appeals denied on June 3, 1998. *See Ex parte
McGahey*, No. 37,371-01 (Tex. Crim. App.).  He filed a second state writ application to
challenge his parole revocation in 2004, which the Texas Court of Criminal Appeals dismissed
for non-compliance with state procedural rules on October 6, 2004.  *See Ex parte McGahey*,
No. 37,371-02.

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted).  "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still

6

comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

## III.   DISCUSSION

### A.   Exhaustion of State Remedies - Claims One Through Three

At the outset, the respondent notes that the first three claims found in McGahey's federal habeas corpus petition were never presented to the state courts and are therefore subject to dismissal for failure to exhaust available state court remedies.  According to the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).  The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Moore v. Quarterman*, 454 F.3d 484, 490-91 (5th Cir. 2006) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations and quotations omitted)).  Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1)(B).

To exhaust his state remedies under the applicable statutory framework, a habeas petitioner must fairly present "the substance of his claim to the state courts." *Moore*, 454

F.3d at 491 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986)).  A federal habeas petitioner shall not be deemed to have exhausted the remedies available in the state courts "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(b)(1)(C).  In Texas, a criminal defendant exhausts his state court remedies by taking the following paths:  (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; and/or (2) he may file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(c); *see also Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990) (discussing the paths of exhaustion in Texas).  In addition, as of January 2000, Texas inmates who dispute the amount of time they have served may be required to present their claims to a prison "dispute resolution" tribunal prior to filing an application for a writ of habeas corpus under Article 11.07.  *See* TEX. GOV'T CODE ANN. § 501.0081 (Vernon Supp. 2001); *Ex parte Stokes*, 15 S.W.3d 532 (Tex. Crim. App. 2000) (per curiam).

McGahey argues that he presented his first three claims in an administrative request for review by the prison time credit dispute resolution tribunal and that this should be sufficient to exhaust his state remedies.  The first three claims presented by McGahey, however, concern the validity of his underlying conviction for aggravated sexual assault and the sentence imposed by a jury in state court.  As articulated by McGahey in his federal

habeas corpus petition, these claims do not concern the administration or calculation of McGahey's sentence by prison officials.   Therefore, presenting these claims for administrative review was not the appropriate procedure to exhaust state remedies.

McGahey concedes that claims one through three were not raised on direct appeal or on state habeas corpus review.  (Doc. # 18).  Although he argues that another state habeas corpus application would be futile, he cites no authority showing that these claims are somehow excused from the exhaustion requirement.  Because McGahey did not present these claims before the state's highest court of criminal jurisdiction, the Court finds that these claims are unexhausted.  This means that McGahey's petition, which contains a mix of exhausted and unexhausted claims, is subject to dismissal.  *See Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

When a federal habeas petitioner brings an unexhausted claim, the reviewing court should either "dismiss the proceedings for failure to exhaust or stay and abate them until a state habeas court has had the opportunity to hear the claim." *Miller v. Dretke*, 431 F.3d 241, 254 (5th Cir. 2005) (citing *Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528, 1534 (2005)), *cert. denied*, — U.S. —, 127 S. Ct. 353 (2006).  McGahey has requested a stay in this instance. (Doc. # 18).  A stay is available only in limited circumstances.  *See Neville v. Dretke*, 423 F.3d 474, 479 (5th Cir. 2005).  As the respondent notes, it is possible that a state court will conclude that any subsequent habeas corpus application by McGahey is barred as an abuse of the writ.  *See* TEX. CODE CRIM. APP. art. 11.07, § 4 (codifying Texas' abuse-of-the-writ doctrine in non-capital cases).  More importantly, for reasons discussed more fully

below, the record discloses that the statute of limitations for federal review has already expired with respect to the claims at issue. The Court concludes, therefore, that a stay is not warranted under the circumstances. McGahey's motion for a stay is denied and the respondent's motion for summary judgment for lack of exhaustion is granted. Alternatively, McGahey's first three claims fail for other reasons outlined briefly below.

**B.      Statute of Limitations - Claims One Through Three**

The respondent maintains that the first three claims found in the pending federal habeas corpus petition are barred by the governing one-year statute of limitations. According to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d)(1). Because the pending petition was filed well after April 24, 1996, the one-year limitations period clearly applies. *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

The first three claims lodged by McGahey concern the validity of his 1986 conviction for aggravated sexual assault and the sentence imposed by the jury in that proceeding. Thus, the statute of limitations for federal habeas corpus review began to run pursuant to 28 U.S.C. § 2244(d)(1)(A) at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The Texas Court of Criminal Appeals refused McGahey's petition for discretionary review on December 1, 1988, and his conviction became final sometime in 1989, when the time expired for him to file a petition

for a writ of certiorari with the United States Supreme Court.  Habeas petitioners whose convictions became final before the AEDPA's effective date on April 24, 1996, were afforded a one-year grace period to file their claims for relief in federal court.  *See United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999) (discussing a habeas corpus application filed under 28 U.S.C. § 2255).  Therefore, McGahey had until April 24, 1997, to seek federal habeas corpus review of this conviction.  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (citing *Flanagan*, 154 F.3d at 201-02).  McGahey's pending federal habeas corpus petition, filed on October 10, 2006, is late by more than nine years and is therefore time-barred unless an exception applies.

### 1.    Statutory Tolling

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed" application for state habeas corpus or other collateral review is pending shall not be counted toward the limitations period.  *See Artuz v. Bennett*, 531 U.S. 4 (2000).  The record shows that McGahey filed a state habeas corpus application to challenge his conviction on March 17, 1998.  The Texas Court of Criminal Appeals denied relief without a written order on June 3, 1998.  *See Ex parte McGahey*, No. 37,371-01.  This application, which does not include any reference to the first three claims presented in the pending federal habeas corpus petition, fails to toll the limitations period found in § 2244(d)(2) because it was filed well after the limitations period had already expired.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (noting that the statute of limitations is not tolled by a state habeas corpus application filed after the expiration of the limitations period).

11

Case 4:06-cv-03343   Document 19   Filed in TXSD on 04/25/07   Page 12 of 33

McGahey attempts to argue that claims one through three are timely because each one is based on Supreme Court authority that did not exist prior to the expiration of his statute of limitations. Under 28 U.S.C. § 2244(d)(1)(C), the statute of limitations for federal habeas corpus review begins to run under these circumstances from the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Here, McGahey argues that claims one through three rest on the Sixth Amendment to the United States Constitution, among other things, as expressed in the following Supreme Court decisions: *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). Importantly, none of the cases relied upon by McGahey were made retroactive by the Supreme Court to defendants on collateral review. *See United States v. Brown*, 305 F.3d 304, 310 (5th Cir. 2002) (*Apprendi* is not retroactive to defendants whose convictions became final before that case was decided), *cert. denied*, 538 U.S. 1007 (2003); *United States v. Edwards*, 442 F.3d 258 (5th Cir. 2006) (holding that *Blakely* and *Booker* are not retroactive on collateral review) (citing *United States v. Gentry*, 432 F.3d 600, 605 (5th Cir. 2005); *In re Elwood*, 408 F.3d 211, 212-13 (5th Cir. 2005)), *cert. denied*, — U.S. —, 127 S. Ct. 11 (2006). Because none of the Supreme Court cases referenced by McGahey are retroactive, his argument that the statute of limitations is extended by § 2244(d)(1)(C) is without merit.

McGahey presents no other basis for statutory tolling and the record fails to disclose

any.  In that regard, McGahey has not alleged that he was subject to state action that impeded

him from filing his petition in a timely manner.  *See* 28 U.S.C. § 2244(d)(1)(B).  Nor does

he identify a factual predicate for the claims that could not have been discovered previously

if the petitioner had acted with due diligence.  *See* 28 U.S.C. § 2244(d)(1)(D). Accordingly,

there is no statutory basis to save the petitioner's late-filed claims.

### 2.     Equitable Tolling

Equitable tolling is an extraordinary remedy which is only sparingly applied.  *See
Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The Fifth Circuit has held

that the statute of limitations found in the AEDPA may be equitably tolled at the district

court's discretion where "exceptional circumstances" are present.  *Coleman v. Johnson*, 184

F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). As the Fifth Circuit has

explained, the doctrine of equitable tolling "applies principally where the plaintiff is actively

misled by the defendant about the cause of action or is prevented in some extraordinary way

from asserting his rights."  *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (quoting

*Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).  Assuming that the

AEDPA allows it, the Supreme Court has noted that a habeas corpus petitioner is not entitled

to equitable tolling unless he establishes "(1) that he has been pursuing his rights diligently,

and (2) 'that some extraordinary circumstance stood in his way' and prevented timely filing."

*Lawrence v. Florida*, — U.S. —, 127 S. Ct. 1079, 1085 (2007) (quoting *Pace v.
DiGuglielmo*, 544 U.S. 408, 418 (2005)).

As noted above, McGahey's aggravated assault conviction became final in 1989,

13

when the time expired for seeking a petition for a writ of certiorari with the United States Supreme Court.  From that time, it is undisputed that McGahey waited nearly ten years to challenge his conviction by filing a state habeas corpus application in March of 1998.  *See Ex parte McGahey*, No. 37,370-01.  McGahey offers no valid explanation for his decision to delay raising his first three claims, which have never been presented in state court and are, as noted above, unexhausted.  It is well established in this circuit that equitable tolling is not available where, as here, the petitioner squanders his federal limitations period.  *See, e.g., Ott v. Johnson*, 192 F.3d 510, 514 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000).

Although McGahey has represented himself on state habeas corpus review and in this federal proceeding, the Fifth Circuit has held that a prisoner's *pro se* status does not excuse an untimely federal habeas corpus petition.  *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 n.13 (5th Cir. 2002), *cert. denied*, 537 U.S. 1116 (2003); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000); *see also United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (holding that *pro se* status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ).  The petitioner's incarceration and ignorance of the law do not otherwise excuse his failure to file a timely petition and are not grounds for equitable tolling.  *See Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *see also Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir.) (noting that a petitioner's ignorance or mistake is insufficient to warrant equitable tolling), *cert. denied*, 539 U.S. 918 (2003).

The Court is mindful of the effect a dismissal will have on the petitioner's ability to

have his claims heard by a federal court.[6]  *See Felder v. Johnson*, 204 F.3d 168, 173 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).  The Fifth Circuit has emphasized, however, that the "strict one-year limitations period" imposed by Congress for the filing of all habeas corpus petitions is "subject only to the narrowest of exceptions." *Fierro v. Cockrell*, 294 F.3d 674, 684 (5th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).  Given the petitioner's lack of diligence, the Court concludes that his circumstances are not among those "rare and exceptional" conditions which warrant deviation from the express rules that Congress has provided.  *See Felder*, 204 F.3d at 173.  McGahey has not established that he is entitled to equitable tolling and, therefore, his first three claims must be dismissed as barred by the governing one-year limitations period.  The respondent's motion for summary judgment on this issue is granted.

## C.   Statute of Limitations - Claim Four

McGahey's remaining claim concerns his challenge to the calculation of his sentence after his return to prison in 2002, following the revocation of his supervised release.  The respondent maintains that this allegation is also barred by the statute of limitations found at 28 U.S.C. § 2244(d)(1)(D), because McGahey was aware of the factual predicate for this claim no later than December 17, 2002, when he returned to TDCJ and received a copy of

---

[6]       The Court notes, however, that claims one through three do not merit relief because, as noted above, the Supreme Court cases relied upon by McGahey (*Apprendi*, *Blakely*, and *Booker*) are not retroactive.  *See United States v. Brown*, 305 F.3d 304, 310 (5th Cir. 2002), *cert. denied*, 538 U.S. 1007 (2003); *United States v. Edwards*, 442 F.3d 258 (5th Cir. 2006) (citing *United States v. Gentry*, 432 F.3d 600, 605 (5th Cir. 2005); *In re Elwood*, 408 F.3d 211, 212-13 (5th Cir. 2005)), *cert. denied*, — U.S. —, 127 S. Ct. 11 (2006).

his sentence.  Alternatively, the respondent points out that McGahey knew or should have known of the factual predicate for this claim no later than December 18, 2003, when prison officials issued a final decision on his administrative challenge to the calculation of his sentence (*i.e.* his "time credit dispute").  (*See* Doc. # 3, Exhibit, Time Credit Dispute Resolution Final Certification Decision, dated December 18, 2003).

Using the date most favorable to McGahey, his challenge to the calculation of his sentence accrued no later than December 18, 2003, with the statute of limitations expiring one-year later on December 18, 2004.  McGahey's pending federal habeas corpus petition, filed on October 10, 2006, is late by at least 660 days.  Therefore, McGahey's fourth claim concerning the calculation of his sentence is time-barred unless an exception applies.

### 1.    Statutory Tolling

McGahey filed a state habeas application to challenge his parole revocation on September 9, 2004, which the Texas Court of Criminal Appeals dismissed after 27 days for non-compliance with state procedural rules on October 6, 2004.  *See Ex parte McGahey*, No. 37,371-02.  McGahey filed a third state habeas application to challenge his parole revocation and the calculation of his sentence on October 26, 2004.  The Texas Court of Criminal Appeals denied that application 114 days later on February 16, 2005.  *See Ex parte McGahey*, No. 37,371-03.  Pursuant to 28 U.S.C. § 2244(d)(2), which allows tolling for a "properly filed" state application for collateral review, these state habeas corpus proceedings tolled the limitations period for no more than a total of 141 days (27 days plus 114 days).  McGahey presents no other basis for statutory tolling and the record does not disclose any.

Accordingly, although McGahey is entitled to a limited extension of 141 days, there is insufficient statutory tolling to save McGahey's fourth claim.

### 2.   Equitable Tolling

McGahey argues that he is entitled to equitable tolling of the limitations period for his fourth claim.  His argument, however, is refuted by the record, which demonstrates lengthy periods of unexplained delay.  The record shows that, after prison officials denied his administrative time credit dispute on December 18, 2003, McGahey waited at least ten months to file a state habeas corpus application on September 9, 2004.  McGahey offers no explanation for this delay.

The Texas Court of Criminal Appeals dismissed McGahey's habeas corpus application for non-compliance with state procedural rules on October 6, 2004.  *See Ex parte McGahey*, No. 37,371-02.  McGahey then filed a third state habeas application to challenge his parole revocation and the calculation of his sentence on October 26, 2004.  *See Ex parte McGahey*, No. 37,371-03.   After the Texas Court of Criminal Appeals denied that application on February 16, 2005, McGahey waited more than eighteen months to file his pending federal habeas corpus petition on October 10, 2006.

McGahey explains that he delayed filing his federal habeas corpus application because he did not learn that his state writ had been denied until August 8, 2006.[7]  In support,

---

[7]      McGahey alleges that he did not receive prompt notice of the dismissal.  The record contains no explanation why McGahey received correspondence from the Texas Court of Criminal Appeals in connection with his state habeas corpus application that was dismissed on October 6, 2004, *Ex parte McGahey*, No. 37,371-02, but not in connection with his subsequent state
(continued...)

he presents a letter from the Texas Court of Criminal Appeals, dated August 8, 2006, confirming that his state writ application was denied on February 16, 2005. (Doc. # 3, Letter from Clerk of Court Louise Pearson).  McGahey argues that the delay in receiving notice from the Texas Court of Criminal Appeals justifies equitable tolling of the statute of limitations in this instance.  The Court disagrees.

McGahey admits that he waited to contact the Texas Court of Criminal Appeals after he submitted his state habeas corpus application on October 26, 2004, until August of 2006, when he inquired whether there had been a ruling.  McGahey explains that he did not inquire about the status of his habeas application earlier because the state courts reportedly frown upon such requests from prisoners.  As support for this argument, McGahey points to a notice that he received from the Clerk's Office for the United States District Court in October of 2006 in this case.  That notice advises as follows: "The case will be handled in the ordinary course of the Court's work.  Writing the Court to ask about your case will only SLOW the process."  (Doc. # 4).[8]  The federal Clerk's Office notice neither prohibits a litigant from writing to the Court generally nor prohibits requests about the status of a case.

_____

[7](...continued)
  habeas corpus application that was filed October 26, 2004, and denied on February 16, 2005,
  *Ex parte McGahey*, No. 37,371-03.  In that respect, the state court records reflect that
  McGahey has resided continuously at the Pack Unit during this time and he does not allege
  any circumstance that would explain his failure to receive notice, such as a change of prison
  unit assignment.

[8]  This advisory is a standard notice sent by the Clerk's Office for the United States District
  Court for the Southern District of Texas to all *pro se* litigants, advising them that their
  complaint or petition has been filed and including information such as the case number and
  the district court to which the case has been assigned.  (*See* Doc. # 4).

18

In fact, the notice provides the proper address and instructions for submitting correspondence and pleadings to the Court.  Most significantly, McGahey provides no evidence that such a notice was sent by the state court in which his third state habeas application was filed.[9] McGahey's argument does not excuse his failure to check on his pending matter.

Even if the Court were to allow McGahey some equitable tolling until August 8, 2006, McGahey fails to sufficiently explain why he waited two additional months, from August 8, 2006 until October 10, 2006, to file his federal habeas corpus petition.  Although McGahey contends that this delay should be excused because he lacked access to documents and records that were stored in a "prison legal locker," McGahey provides no information about when he requested those materials or when he received them from prison officials.  The Fifth Circuit has held that a habeas corpus petitioner is not entitled to an extended delay while he gathers every scrap of evidence that might support his claim.  *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).  Thus, lack of access to legal documents and records by an inmate does not present an "exceptional circumstance" that would warrant equitable tolling. *See Roughley v. Cockrell*, 2002 WL 1899622 (5th Cir. July 12, 2002) (No. 01-11378) (rejecting a claim for equitable tolling based on an inmate's unfulfilled request for state court records); *Cofer v. Johnson*, 2000 WL 1029201 (5th Cir. July 14, 2000) (No. 99-40878) (rejecting a claim for equitable tolling based on delay in receiving a copy of state court

---

[9]     There is a form letter from the Clerk's Office for the Texas Court of Criminal Appeals among the petitioner's exhibits.  (Doc. # 3, Letter dated August 8, 2006).  That form letter contains a variety of information, but no language placing any restriction on a prisoner's written requests for status.

records); *Kiser v. Dretke*, 2004 WL 2331592 (N.D. Tex. 2004) ("Difficulty obtaining records and lack of money to pay for copies are common problems among inmates who are trying to pursue post-conviction habeas relief and, thus, do not present exceptional circumstances that warrant equitable tolling.").

McGahey fails to show that he pursued his claim concerning the calculation of his sentence with the requisite diligence.  Because he lacked the requisite diligence, the Court concludes that McGahey's circumstances are not among those "rare and exceptional" conditions which warrant equitable tolling.  *See Felder*, 204 F.3d at 173.  Thus, McGahey's fourth claim is barred by the governing one-year limitations period.  The respondent's motion for summary judgment on this issue is granted.  Alternatively, McGahey's fourth claim fails for other reasons outlined below.

### D.    Claim Four Has No Merit

As noted previously, McGahey challenges the calculation of his sentence upon his return to prison following the revocation of his supervised release.  McGahey clarifies that he does not seek restoration of street-time credit based on § 508.283(c) of the Texas Government Code.[10]  Instead, he challenges the refusal of prison officials to restore previously earned good-time credit that was forfeited upon the revocation of his supervised

---

[10]    Although some inmates who return to prison following a parole revocation are entitled to street-time credit, the respondent correctly notes that McGahey does not meet the applicable statutory criteria because he was convicted previously of aggravated sexual assault. Aggravated sexual assault is one of the offenses listed in § 508.149(a) of the Texas Government Code, which precludes a parole violator from eligibility for restored street-time credit under § 508.283(c).  *See* TEX. GOV'T CODE § 508.149(a). Accordingly, McGahey is not eligible for restored credit for the time he spent out on parole.

20

release pursuant to § 498.004(b) of the Texas Government Code.  McGahey maintains that, by refusing to restore these forfeited credits under the law that was in place at the time of his offense in 1985, prison officials have unlawfully lengthened his sentence and increased his punishment in violation of his right to due process and the prohibition against ex post facto laws.

It appears from the record that McGahey's claim concerning the calculation of his sentence was raised and rejected by the Texas Court of Criminal Appeals on state habeas corpus review.  *See Ex parte McGahey*, No. 37,371-03.  Because this was an adjudication on the merits, McGahey is not entitled to federal habeas corpus relief unless the state court's conclusion:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000).  Even under the liberal construction accorded to *pro se* pleadings, McGahey falls well short of meeting this deferential standard.

**1.     There is No Due Process Right to the Restoration of Previously Earned Good-Time Credit Forfeited Following a Parole Revocation**

McGahey complains that prison officials violated his right to due process by refusing to restore good-time credits that he earned while previously incarcerated in TDCJ, before his early release from prison in 1998, which good-time credits were forfeited upon his parole

revocation in 2002.  The United States Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison.  *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).  Thus, as an initial matter, whether McGahey is entitled to good-time credit is a question of Texas law.  This analysis requires a brief overview of the Texas good-time credit scheme.

A Texas inmate does not earn good-time credit simply for good behavior.  A Texas inmate may earn good-time credit only if prison officials find that the inmate is actively engaged in an agricultural, vocational, or educational endeavor, in an industrial program or other work program, or in a treatment program.  *See* TEX. GOV'T CODE ANN. §§ 498.003(a), (d).   Good-time credit serves two functions in Texas: (1) it determines a prisoner's mandatory supervision release date (if he is eligible for early release on mandatory supervision parole); and (2) it advances a prisoner's date of eligibility for early release on discretionary parole.  *See* 5 JOHN M. SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE: PAROLE § 101.03[3] (2007).  Thus, good-time credit does not reduce an inmate's sentence and relates only to his eligibility for early release.  *See* TEX. GOV'T CODE ANN. § 498.003(a); *Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim. App. 1983).

Texas inmates are classified for purposes of good-time earning eligibility, with trusties occupying the highest level.  *See* 5 SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE: PAROLE § 101.03[3] (citing TEX. GOV'T CODE ANN. § 498.003(b)).  Other inmates are classified as Level I, II, and III, with Level III representing the lowest good-time earning status.  *See id*.  Depending on his classification, an inmate may be eligible to accrue good-

time credit at the following rate:

> (1)    20 days for each 30 days actually served while the inmate is classified as a
>        trusty, except that the department may award the inmate not more than 10
>        extra days for each 30 days actually served;
>
> (2)    20 days for each 30 days actually served while the inmate is classified as a
>        Class I inmate; and
>
> (3)    10 days for each 30 days actually served while the inmate is classified as a
>        Class II inmate.

TEX. GOV'T CODE ANN. § 498.003(b).  Class III prisoners and those inmates who are on parole or mandatory supervision do not accrue any good-time credit.  *Id.* at § 498.003(c).

At all times relevant to this case, Texas law has provided that good-time credit earned by inmates is a privilege and not a right.  *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (1985); *see also* TEX. GOV'T CODE ANN. § 498.003(a) (Vernon 2004) (governing the accrual of good-time credit today).  Texas law has long held that, as a privilege, good-time credit may be forfeited either by violating prison disciplinary rules while in custody or by violating the terms and conditions of his conditional release on parole.  *See Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim. App. 1983).  In addition, a Texas inmate may also forfeit good-time credit any time a state or federal court dismisses as "frivolous or malicious" a lawsuit filed by the inmate while in custody.  *See* TEX. GOV'T CODE ANN. § 498.0045(a); *Ex parte Rieck*, 144 S.W.3d 510 (Tex. Crim. App. 2004).

McGahey does not dispute that prison officials had the right to forfeit his previously earned good-time credits upon the revocation of his parole in 2002.  Indeed, under the law in effect at the time of the offense in 1985, Texas law clearly authorized the forfeiture of

previously earned good-time credit upon the revocation of an inmate's parole or mandatory supervision.  *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4.  Under that law, however, the director of prisons retained some discretion to restore those forfeited good-time credits under certain circumstances:

> Upon revocation of parole or mandatory supervision of an inmate, the inmate loses all good conduct time previously accrued, but upon return to the department the inmate may accrue new good conduct time for subsequent time served in the department. The director may, however, restore good conduct time forfeited upon revocations not involving new criminal convictions after an inmate has served a reasonable period of good behavior in the department, to be no less than three months, subject to rules adopted by the department.

*Id*.  In 1987, the Texas legislature adopted a measure that allowed the Texas Board of Criminal Justice to adjust its policy on good-time restoration depending on the need to relieve prison overcrowding.[11]  *See Hallmark v. Johnson*, 118 F.3d 1073, 1075 (5th Cir. 1997) (describing the provision, which allowed the Texas Board Criminal Justice to review it's policies relating to good-time credit restoration on an annual basis).  As McGahey notes, the Texas legislature amended the statute governing forfeiture of good-time credit  in 1995 and formally discontinued any discretion to restore previously earned good-time credits. The amended statute provides that, once an inmate's parole or supervised release is revoked, the inmate may accrue new good-time credit upon his return to prison, but that prison officials could no longer restore previously earned good-time forfeited upon the revocation:

> On the revocation of parole or mandatory supervision of an inmate, the inmate

---

[11]    McGahey refers to this provision as Senate Bill (SB) 1167, which reportedly authorized the implementation of a mandatory release program for eligible prisoners pursuant to Administrative Directive 04.85.  (Doc. # 2, *Memorandum*, at 5-6).

forfeits all good conduct time previously accrued.  On return to [TDCJ] the inmate may accrue new good conduct time for subsequent time served in [the Correctional Institutions Division].  The department may not restore good conduct time forfeited on a revocation.

Acts 1995, 74th Leg., ch. 249, § 4 (effective Sept. 1, 1995), codified as amended at TEX. GOV'T CODE ANN. § 498.004(b).

McGahey insists that he is eligible for restored good-time credit under the former statute that was in place prior to 1995, and that, by refusing to restore previously earned good-time credits forfeited upon the revocation of his supervised release, prison officials have improperly applied the 1995 amended statute found at § 498.004(b) of the Texas Government Code.  To the extent that McGahey relies upon the Due Process Clause for relief, he cannot prevail unless he shows that he had a protected liberty interest in having his forfeited good-time credit restored.[12]  Prison inmates are entitled to protection under the Due Process Clause only when an official action infringes upon a constitutionally protected liberty interest.  *See Sandin v. Conner*, 515 U.S. 472 (1995).  Liberty interests emanate from either the Due Process Clause itself or from state law.  *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  A convicted prisoner does not have a constitutional right to conditional release before the expiration of a valid sentence.  *See Greenholtz v.*

---

[12]  The Fourteenth Amendment of the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The forfeiture of good-time credits does not result in the loss of life and it is also settled that Texas prisoners have no property interest in their accumulated good-time credits.  *Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995).  To prevail with a claim under the Due Process Clause, therefore, a Texas inmate must demonstrate that he has a liberty interest in the good-time credit at issue.

25

*Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). To the extent that McGahey's claim rests on the existence of an interest created by state law, it is settled that only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996).

As noted previously, Texas law provides that the good-time credit an offender accumulates "applies only to eligibility for parole or mandatory supervision . . . and does not otherwise affect an inmate's term [of imprisonment, *i.e.*, his sentence]." TEX. GOV'T CODE ANN. § 498.003(a). The existence of a protected liberty interest in good-time credits depends on whether those credits apply towards an inmate's eligibility for release on parole or mandatory supervision. Texas inmates who are eligible for mandatory supervision have a constitutional expectancy of early release under the Texas mandatory supervision scheme and a protected liberty interest in the good-time credits that they have earned. *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) (addressing the mandatory supervision scheme in place prior to September 1, 1996); *see also Teague v. Quarterman*, — F.3d —, 2007 WL 841600 (5th Cir. 2007) (addressing the mandatory supervision scheme in place before and after September 1, 1996). The Fifth Circuit has clarified that no amount of good-time credit may be forfeited as the result of prison disciplinary proceedings against a Texas inmate who is eligible for early release on mandatory supervision *unless* the inmate is afforded due process. *See Teague*, 2007 WL 841600, *7.

In contrast to the expectation of early release accorded inmates eligible for mandatory supervision, there is no protected liberty interest in the attainment of parole in Texas.  The United States Supreme Court has recognized that the states have no duty to establish a parole system and that there is no constitutional right to be released on parole before the expiration of a valid sentence.  *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987) (explaining that "statutes or regulations that provide that a prole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute which "provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process").  In light of this authority, the Fifth Circuit has recognized repeatedly that the Texas parole statutes create no constitutional right to release on parole because they encourage no expectancy of early release.  *See Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir.), *cert. denied*, 454 U.S. 854 (1981) (Texas parole statute does not create a protectable expectancy of release, as recognized in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979), but rather creates nothing more than a hope of parole); *see also Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995); *Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993); *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir.), *cert. denied*, 501 U.S. 1210 (1991).  It is settled that Texas inmates "have no protected liberty interest in parole." *Johnson*, 110 F.3d at 308. Thus, Texas inmates who are eligible for parole, but not for mandatory supervision, have no protected liberty interest in their good-time credits.

27

Even if good-time credits are earned, they may be forfeited under certain circumstances and there is no right, let alone an automatic right, to reinstatement of these credits. A review of the statute that previously governed the restoration of forfeited good-time credits, whether that sanction occurred as the result of a prison disciplinary proceeding or the result of a parole or mandatory supervision revocation, shows that the restoration of those previously earned good-time credits was always speculative and discretionary. *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4, codified as amended at TEX. GOV'T CODE ANN. § 498.004(b). Because the pre-1995 statutory scheme created no "unilateral hope" or "absolute right" to the restoration of these forfeited good-time credits, Texas courts have held that state prisoners have no protected liberty interest in the restoration of previously earned good-time credits. *See Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995); *Henderson*, 645 S.W.2d at 472. Acknowledging that Texas prison authorities formerly possessed complete and unfettered discretion over the decision whether or not to restore these credits, the Fifth Circuit has also confirmed that Texas inmates have no protected liberty interest in the restoration of those forfeited credits.[13]  *See Hallmark v. Johnson*, 118 F.3d 1073, 1079-80 (5th Cir. 1997) (citing *Greenholtz*, 442 U.S. at 11); *Turner v. Johnson*, 46 F. Supp. 2d 655, 671 (S.D. Tex. 1999).

---

[13]  It bears repeating that, under the statute that has been in place since 1995, Texas inmates have no right to the restoration of forfeited good-time credits. *See* TEX. GOV'T CODE ANN. § 498.004. Even under the more favorable statutory scheme formerly in place prior to 1995, McGahey had no protected liberty interest and therefore no due process right to the restoration of forfeited good-time credits because decisions whether to restore good-time credits under the former scheme were discretionary.

Absent a showing that McGahey's claim implicates a protected liberty interest, the failure or refusal to restore forfeited good-time credits does not violate the Due Process Clause of the United States Constitution. *See Hallmark*, 118 F.3d at 1079-80; *Turner*, 46 F. Supp. 2d at 671. Alternatively, even assuming there was a liberty interest in forfeited good-time credit, McGahey does not allege or show that he lacked notice or that he was denied a fair hearing after he violated the conditions of his supervised release. In that respect, McGahey does not challenge the validity of his parole revocation proceeding. For these reasons, McGahey does not demonstrate that he is entitled to relief for the alleged violation of his due process rights for the failure to restore good-time credits earned prior to his release on mandatory supervision.

> **2.      The Refusal to Restore Previously Earned Good-Time Credit Forfeited Following a Parole Revocation is not an Ex Post Facto Violation**

McGahey argues further that prison officials have retroactively applied the 1995 statute codified at § 498.004(b) of the Texas Government Code, which prohibits the restoration of previously earned good-time credit forfeited as the result of a parole or mandatory supervision revocation, even though this statute was not in effect when the offense and conviction occurred. By refusing to restore his previously earned good-time credit, McGahey maintains that his sentence has increased in violation of the prohibition against ex post facto laws.

Article I, Section 10 of the United States Constitution provides that "[n]o state shall . . . pass any . . . ex post facto [l]aw." The Supreme Court has construed this to mean that

states are prohibited from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981).  Thus, the following two elements must be present for an ex post facto violation to occur: "(1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes." *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004) (citations and quotation omitted).  Where a statute applies retroactively, the existence of an ex post facto violation depends on whether the statute constitutes additional criminal punishment for the crimes previously committed.  *See Kansas v. Hendricks*, 521 U.S. 346, 371 (1997).

McGahey cannot show that the complained of law constitutes a retrospective change to his detriment because there has been no increase in his punishment.  As referenced above, since 1977, Texas law has specifically recognized that good-time credit applies only to an inmate's eligibility for parole or mandatory supervision, and not to the length of his sentence. *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4, codified as amended at TEX. GOV'T CODE ANN. § 498.003(a).  Because good-time credit has no effect on the length of sentence imposed, an inmate's punishment is not increased by the forfeiture of previously earned time credits.  *See Hallmark*, 118 F.3d at 1077;  *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994).  Absent a showing that his punishment was increased by the failure or refusal of prison officials to restore the forfeited good-time credit, McGahey fails to establish an ex post facto violation.

30

In summary, McGahey's claim concerning the calculation of his sentence was raised and rejected by the Texas Court of Criminal Appeals on state habeas corpus review. McGahey has not demonstrated that the state court's decision to deny his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).   Accordingly, McGahey is not entitled to federal habeas corpus relief from the calculation of his sentence and the respondent's motion for summary judgment on this issue is granted.

**IV.   <u>CERTIFICATE OF APPEALABILITY</u>**

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling

standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has carefully considered all of the pleadings and the applicable law.  Based on this review, and for the reasons set forth above, the Court concludes that jurists of reason would not debate whether any of the procedural rulings are correct, or whether any assessment of the above-referenced constitutional claims is debatable or wrong.  Because the petitioner has failed to make "a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue in this case.

## V.    <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment (Doc. # 16) is **GRANTED**.

2.    The petitioner's motion for a stay (Doc. # 18) is **DENIED**.

3.    The federal habeas corpus petition is **DENIED** and this case is **DISMISSED**

with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas on <u>April 25</u>, 2007.


Nancy F. Atlas
United States District Judge